IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.T.M., an adult individual | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-4689 |
| | : | |
| | : | |
| **ESTELLE B. RICHMAN, <u>et al.</u>** | : | |

<u>**MEMORANDUM AND ORDER**</u>

**Kauffman, J.**                                                                                          **November 19, 2008**

Plaintiff J.T.M. ("Plaintiff") brings this action alleging violations of his substantive and procedural due process rights.  Now before the Court are three separate Motions to Dismiss by Defendants (1) Estelle B. Richman; (2) Sandra Steiker; and (3) Delaware County Department of Children and Youth Services, Delaware County, and Angela Albano.  For the reasons that follow, the Motions will be granted in part and denied in part.

**I.     BACKGROUND**

The facts, as alleged in the Complaint, are as follows.  Plaintiff is the natural father and legal guardian of the three minor children, M.M., C.M. and D.M.  Plaintiff shares legal custody of the children with S.M., his wife and his children's mother.  Am. Compl. ¶ 1.  S.M. enjoys primary custody while Plaintiff has limited, supervised custodial rights.  <u>Id.</u> ¶ 2.  In May 2004, S.M. allegedly witnessed two of her children, M.M. and C.M., engage in "hyper-sexual" behavior.  In August 2004, she took M.M. to Defendant Sandra Steiker, a licensed clinical social worker and a paid contractor and consultant of the Delaware County Department of Children and Youth Services ("CYS").  <u>Id.</u> ¶ 42; Ex. E.  Defendant Steiker claims she possesses the ability to

1

interpret childrens' activities, such as crayon drawings, to identify individual perpetrators of abuse.  Id. ¶ 42.  On March 3, 2005, Defendant Steiker provided an oral report stating her opinion that Plaintiff committed child abuse against his daughter M.M.  Id.; Ex. A.  Plaintiff alleges that Defendant Steiker's actions in assisting S.M. were at all times in accordance with the custom and policy of CYS and Defendant Delaware County.[1]  Id. ¶ 52.  Plaintiff and S.M. separated in March 2005 and filed for divorce in April 2005 following S.M.'s allegations that Plaintiff had sexually molested both M.M. and C.M.  Id. Ex. E.  Since March 2005, Plaintiff has been afforded a maximum of eight hours per week of supervised visitation with his children and has been involved in ongoing litigation with his ex-wife over their custody.  Id. ¶¶ 48-49.

Pennsylvania's Child Protective Services Law, 23 Pa. C.S. §§ 6301-6386 ("CPSL"), mandates that the Pennsylvania Department of Public Welfare ("DPW") maintain a "[s]tatewide central register of child abuse." 23 Pa. C.S. § 6331(3); Am. Compl. ¶ 13.  The CPSL requires local family service agencies to submit a document called a Form CY-48 Child Protective Service Investigation Report to the statewide ChildLine registry ("ChildLine"), the DPW's abuse register, to report the results of their investigations into claims of child abuse.  Local child protective services agencies may report these claims of abuse as either "unfounded," "indicated," or "founded."  Id. ¶ 16.

An "indicated report" is an executive agency declaration that "substantial evidence" exists to support an allegation of abuse against an individual accused of child abuse based on (1) medical evidence, (2) a child protective service investigation, or (3) an admission of acts of abuse

---

[1] Plaintiff alleges in the alternative that CYS and Defendant Delaware County failed to train their agents or employees in the proper investigation and administrative actions in support of prosecutions of child abuse.  Id. ¶ 53.

by a perpetrator.  23 Pa. C.S. § 6303; Am. Compl. ¶ 14.  Pennsylvania law defines "substantial evidence" as evidence that outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion.  23 Pa. C.S. § 6303; Am. Compl. ¶ 15. Judicial or administrative hearings are not held before an indicated report is accepted by the DPW and the name of the accused individual is added to ChildLine.  Am. Compl. ¶ 17.

On or about May 2, 2005, Defendant CYS, through its employee Angela Albano, transmitted to the DPW a Form CY-48 naming Plaintiff a perpetrator of child abuse against M.M.[2]  Id. ¶ 25.  As a result of the submission by CYS, Plaintiff was registered as a child abuser on ChildLine.  Id. ¶ 26.  On or about June 2005, Plaintiff requested that the Secretary of the DPW expunge the record of indicated abuse filed against him.  Id. ¶ 27.  His request was denied, and in July 2005 Plaintiff requested an administrative hearing.  Id. ¶ 28.  In October 2005, prior to the hearing, CYS notified the Secretary's designated hearing officer that it would not pursue its case against Plaintiff.  Id. ¶ 29.  On November 1, 2005, the administrative law judge issued a recommendation that the indicated report of abuse be expunged.  The recommendation was adopted by the Regional Manager for the Bureau of Hearings and Appeals on November 7, 2005, approximately 6 months after Plaintiff's name was added to the registry.  Id. ¶¶ 30-31.  On December 28, 2005, Plaintiff was notified by letter that the report of abuse had been expunged. Id. ¶ 32.

On January 3, 2007, following an eight-day custody trial, the Delaware County Court of Common Pleas found as a matter of fact that the evidence presented against Plaintiff was

---

[2] The conclusions reported in the Form CY-48 are based, at least in part, on the opinions presented in Defendant Steiker's March 3, 2005 oral report.  See Am. Compl. Ex. A.

insufficient to meet the preponderance of the evidence standard, and granted him a maximum of eight hours per week of supervised visitation with his children. Id. Ex. E.

Plaintiff alleges six causes of action in his Amended Complaint. His First and Second Causes of Action are against Defendant Estelle B. Richman, in her official capacity as Secretary of State of the Commonwealth of Pennsylvania, Department of Public Welfare, for injunctive relief for denial of procedural due process under the CPSL. Plaintiff's Third Cause of Action is against Defendants Sandra Steiker and Angela Albano for damages under 42 U.S.C. § 1983. His Fourth Cause of Action is against Defendants Delaware County and CYS for damages under 42 U.S.C. § 1983. His Fifth Cause of Action is against all Defendants for declaratory relief under 28 U.S.C. § 2201 and 42 U.S.C. § 1983. His Sixth Cause of Action is against Defendant Steiker for damages for professional malpractice.

In response to Defendants Delaware County, CYS, and Albano's Motion to Dismiss, Plaintiff has consented to the dismissal of Defendant Albano in her official capacity and Defendant CYS.³ In response to Defendant Steiker's Motion to Dismiss, Plaintiff has withdrawn with prejudice the Fifth Cause of Action as against Defendant Steiker and withdrawn without prejudice the Sixth Cause of Action.

The remaining claims to be resolved are those pending against Defendants Richman in the First, Second, and Fifth Causes of Action; Sandra Steiker in the Third Cause of Action; and Delaware County in the Fourth and Fifth Causes of Action.

---

³ Plaintiff had previously consented to the dismissal of the claims against Defendant Albano in her *individual* capacity.

## II. SUBJECT MATTER JURISDICTION

Because several Defendants challenge the Court's jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court will address those jurisdictional questions first. See, e.g., Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n, 657 F.2d 29, 36 (3d Cir. 1981) ("A federal court is bound to consider its own jurisdiction preliminary to consideration of the merits."). As with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court considering a "facial attack" on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) must accept all well pleaded allegations in the complaint as true. See, e.g., Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977) (contrasting a "facial attack" on jurisdiction, in which the allegations of the complaint are assumed to be true, with a "factual attack" on jurisdiction, in which "no presumptive truthfulness attaches to plaintiff's allegations"). A "facial attack" contends "that the complaint fails to allege subject matter jurisdiction, or contains defects in the jurisdictional allegations." Jiricko v. Bennett, Bricklin & Saltzburg, LLP, 321 F. Supp. 2d 636, 639 (E.D. Pa. 2004) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1250, at 212-18 (2d ed. 1990)). Because Defendants contend that the Amended Complaint is facially insufficient to support subject matter jurisdiction, the Court will consider the 12(b)(1) motion as a "facial attack" and accept the truth of all well-pleaded allegations of the Amended Complaint.

### A. Mootness

Defendant Richman contends that Plaintiff's claims for injunctive and declaratory relief—the First, Second, and Fifth Causes of Action—must be dismissed as moot. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir. 1987)

(citing Powell v. McCormack, 395 U.S. 486 (1969) (stating that federal courts are "without power to decide questions that cannot affect the rights of litigants in the case before them")). Defendant Richman contends that Plaintiff's case is no longer "live" because his name is no longer on the statewide central register of child abuse. Richman Mot. at 14.

Plaintiff agrees, but notes that the Supreme Court recognizes an "established exception to mootness for disputes capable of repetition, yet evading review." FEC v. Wis. Right to Life, Inc., 127 S. Ct. 2652, 2662 (2007) (citing Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)). An assertion of jurisdiction on the basis that a dispute is "capable of repetition, yet evading review" is limited to application only in "exceptional situations" in which "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (internal quotation marks and alteration omitted). "Both of these conditions must be met if a case is to be saved from mootness." N.J. Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985).

Plaintiff fails to meet either prong of the Lyons exceptional situations test. First, he has failed to assert that he would lack sufficient time to bring a federal action for injunctive relief if he were identified in a future indicated report. Plaintiff instead argues that the Anti-Injunction Act would prevent him from seeking relief in this Court during a state proceeding.[4] However, the Supreme Court in Mitchum v. Foster held that § 1983 actions, like the one Plaintiff has asserted here, are excepted from the Act. 407 U.S. 225, 242-43 (1972) ("[W]e conclude that,

---

[4] 28 U.S.C. § 2283 states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

under the criteria established in our previous decisions construing the anti-injunction statute, § 1983 is an Act of Congress that falls within the 'expressly authorized' exception of that law.").

Second, there is no reason to expect that Plaintiff will be subject to the same action again. In Murphy v. Hunt, the Supreme Court stated that "[t]he Court has never held that a mere physical or theoretical possibility was sufficient to satisfy [the second prong of the mootness exception]." 455 U.S. 478, 481 (1982). To meet this requirement, the complaining party must show there is a "'reasonable expectation' or a 'demonstrated probability' that the controversy will recur involving the same complaining party." Id. at 482 (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975)). The controversy must be "capable of repetition," which is "not a synonym for 'mere speculation;' it is a substantive term on which the moving party must provide a reasonable quantity of proof—perhaps even by the preponderance of the evidence." N.J. Tpk. Auth., 772 F.2d at 33. Plaintiff speculates that his name will be placed in the ChildLine registry again because he believes the first accusation was made against him in bad faith and without reasonable cause, and because he is engaged in highly contentious ongoing litigation concerning the custody rights of his children. Am. Compl. ¶¶ 59, 69. However, litigation in Plaintiff's child custody case was resolved on January 3, 2007 by court order. Id. Ex. E. For his name to be placed on the registry again, (1) Plaintiff must first regain unsupervised visitation custody rights, (2) new bad faith allegations of abuse must be reported, (3) the County must find that there is sufficient evidence to support these new allegations, and (4) the County must file an indicated report against him. The above series of speculative events cannot constitute a reasonable expectation that Plaintiff will be subject to the same action again.

Because the Court finds Plaintiff's claims for injunctive and declaratory relief are moot,

7

the Court lacks jurisdiction over Counts One, Two, and Five of the Amended Complaint.

**B.      Rooker-Feldman Doctrine**

Defendants argue that the Court lacks jurisdiction on the remaining claims—the Third and Fourth Causes of Action—pursuant to the Rooker-Feldman doctrine, which "precludes a federal action if the relief requested in the federal action would effectively reverse the state decision or void its ruling."  Ajjahnon v. New Jersey, 238 F. App'x 769, 770 (3d Cir. 2007); see also Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006).  In this case, Plaintiff does not challenge the adverse state court judgment, nor does he seek its reversal. Rather, he challenges both the actions of Defendant Delaware County that led to his placement in the ChildLine registry and the investigatory and administrative actions of Defendant Steiker. Therefore, the Court finds the doctrine inapplicable and that Plaintiff has standing to proceed with his remaining causes of action.  The Court will thus turn to Defendants' 12(b)(6) Motions.

**III.    FAILURE TO STATE A CLAIM**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required "to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  In deciding a 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the

allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (citations omitted in original) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).

A.  **Statute of Limitations**

Defendant Delaware County contends that Plaintiff's Fourth Cause of Action must be dismissed because it was not commenced within the applicable statute of limitations.  Although the parties agree that the two-year statute of limitations governing personal injury claims in Pennsylvania applies, they disagree as to when the limitations period began to run.  Delaware County argues that because a cause of action accrues when Plaintiff knew or had reason to know of his injury, the limitations period began to run on May 2, 2005, when Angela Albano transmitted the indicated report of abuse to DPW.  Delaware County contends in the alternative that the statute of limitations period began in June 2005 when Plaintiff requested that the report be expunged.  Because Plaintiff did not file his Complaint until November 2007, Delaware County contends that the claims are untimely.

Plaintiff responds that the statute of limitations did not begin to run until November 7, 2005 at the earliest, because that is when his name was ordered expunged from the ChildLine registry.  Plaintiff alternatively argues that the statute of limitations period began on December 28, 2005, the date of the letter informing him that the report had been expunged, rendering his action timely.  He argues that the tort of malicious prosecution provides an appropriate analogy because it involves the filing of baseless claims or charges that are ultimately dismissed in favor of the accused.  The statute of limitations in cases of malicious prosecution begins to run when

9

the criminal proceedings are terminated and the accused is vindicated.  See Cap v. K-Mart Discount Stores, Inc., 515 A.2d 52, 53 (Pa. Super. Ct. 1986) ("[T]he statute of limitations for a malicious prosecution claim begins to run, not on the day of the incident, but at the time a plaintiff is successfully vindicated of the charges against him."); see also Hamidian v. Occulto, 854 F. Supp. 350, 353 (M.D. Pa. 1994) ("While a claim for malicious prosecution . . . bears a two-year statute of limitations period, the statute does not begin to run until the underlying criminal proceedings have ended in plaintiff's favor.").

As with the tort of malicious prosecution, a late-starting statute of limitations prevents the accused from having to commence an action challenging state action prior to being vindicated of the charges against him, and avoids parallel proceedings at the state administrative and federal levels, reducing the risk of inconsistent outcomes and serving the interests of finality.  See Heck v. Humphrey, 512 U.S. 477, 484 (1994) ("This requirement 'avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'").  Accordingly, because Plaintiff commenced the instant action within two years of the expungement of his record, his claims were timely-filed.

**B.      Section 1983 Claims**

In Count Four of the Amended Complaint, Plaintiff seeks imposition of liability upon Defendant Delaware County for the actions of its employee, Angela Albano, in filing an

allegedly baseless report of abuse that resulted in Plaintiff's placement in the ChildLine registry. It is well-established that municipal liability arising from § 1983 violations cannot be imposed under the doctrine of *respondeat superior*.  Monell v. Dep't of Soc. Serv. of City of N.Y., 436 U.S. 658, 691 (1978).  Liability can be imposed on a municipality only when the alleged injury is inflicted as part of a government policy or custom.  See Oaks v. City of Philadelphia, 59 F. App'x 502, 503 (3d Cir. 2003).  A government policy is made when a decision-maker holding final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).  Alternatively, a course of conduct may be considered a custom when "practices of state officials are so permanent and well settled as to virtually constitute law."  Andrews, 895 F.2d at 1480 (citing Monell, 436 U.S. at 690 (citations omitted)).  Additionally, a plaintiff seeking to establish municipal liability bears the burden of "proving that the municipal practice was the proximate cause of the injuries suffered."  Hogan v. City of Easton, 2006 WL 3702637, at *9 (E.D. Pa. Dec. 12, 2006) (citations omitted).

Plaintiff alleges that Delaware County maintains a policy or custom that requires case workers to file reports of indicated abuse even without reasonable cause, and that this custom violated his right to be free from arbitrary exercise of governmental power.  See Am. Compl. ¶¶ 89-94.  Plaintiff further alleges that as a proximate result of Defendant's actions, he suffered diminution of his custodial and visitation rights to his children and a loss of employment opportunities in teaching.

Delaware County argues that Plaintiff has failed to state a cause of action for municipal

liability because he has not established any deprivation of a constitutional right, and has not identified any official policy or custom of Delaware County that caused a constitutional injury. The Court disagrees.

### 1. *Substantive Due Process*

Plaintiff alleges that as a result of Defendant Delaware County's conduct, he suffered damage to his reputation, humiliation, pain and embarrassment, and expressed fear that he will be accused of sexual abuse of his children again in the future. Am. Compl. ¶¶ 59, 61. The Court agrees with Delaware County that these alleged harms alone cannot serve as a basis for a claim of denial of a constitutional right. See Robertson v. Fiore, 62 F.3d 596, 601 (3d Cir. 1995) ("[D]amage flowing from harm to reputation alone does not give rise to a protected liberty interest."). A plaintiff alleging a due process violation must satisfy the "*stigma-plus*" test, and demonstrate that he suffered a stigma to his reputation plus deprivation of some additional right or interest. See Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006); Dillman v. Chaffinch, 313 F. Supp. 2d 415, 422 (D. Del. 2004). However, Plaintiff has made two other claims that may entitle him to relief: (1) that his custodial rights to his children have been adversely affected, see Am. Compl. ¶¶ 57-58, and (2) that Delaware County's actions have adversely affected his chances of securing employment as an educator in the future. Id. ¶ 56.

### (a) Loss of Custodial Rights

It is well-settled that parents possess a fundamental liberty interest in the care and custody of their children. See Lehr v. Robertson, 463 U.S. 248, 257-58 (1983); Miller v. City of Philadelphia, 174 F.3d 368, 374-75 (3d Cir. 1999). This interest is not absolute, and "the right to

familial integrity . . . does not include a right to remain free from child abuse investigations." Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997); see also Payne v. City of Philadelphia, 2007 WL 4441207, at *3 (E.D. Pa. Dec. 18, 2007). Courts evaluating allegations of governmental encroachment on such rights have held that "where abusive action by a member of the executive branch is alleged, only the most egregious official conduct can be said to be arbitrary in a constitutional sense." Miller, 174 F.3d at 375 (citing County of Sacramento v. Lewis, 523 U.S. 833 (1998)). "To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'" Id. In Croft, 103 F.3d at 1123, a social worker, acting on a telephone call informing her superiors that the plaintiff, Dr. Croft, had sexually abused his daughter, visited the family's home and threatened to remove a child unless the father agreed to leave the home. Id. The Third Circuit, evaluating the plaintiff's due process claim, balanced the fundamental liberty interests of the family unit with the interests of the state in protecting children from abuse, and noted that a "state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." Id. at 1126. The Court reversed the district court's grant of summary judgment in favor of Defendants, finding that the social worker's conduct, taken without objective evidence of abuse, was an arbitrary abuse of government power. Id. at 1127; see also Miller, 174 F.3d at 376 ("[D]ecision-making by a social worker that is so clearly arbitrary, as was that in Croft, can properly be said to 'shock the conscience'" and, therefore, violated the substantive due process rights of the affected family.").

At the motion to dismiss stage, the Court must assume the truth of Plaintiff's allegations

that the report of abuse against him was filed in the absence of substantial evidence as part of a municipal custom or policy. Moreover, the Court must accept as true Plaintiff's allegation that the report, which led to his placement in the ChildLine registry, adversely affected his custodial rights to his children. Accordingly, consistent with the Third Circuit's opinions in Croft and Miller, the Court finds that Plaintiff has stated a claim for violation of his substantive due process rights for loss of custodial rights due to Defendant Delaware County's policies.

### (b) Loss of Employment Opportunities

Plaintiff alleges that his placement in the ChildLine registry will adversely affect his ability to seek employment as an educator in the future. The Third Circuit has recognized that the Constitution protects individuals "from state actions that threaten to deprive [them] of the right to pursue their chosen occupation." Piecknick v. Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994).

In Valmonte v. Bane, 18 F.3d 992 (2d Cir. 1994), a factually analogous case, the plaintiff claimed that her due process rights were violated as a result of her placement in a state-wide registry of suspected child abusers, and that "but for" her presence in the registry, she would have looked for a position in the child care field. The Court found that although the plaintiff had not yet suffered an actual injury or even sought a job in the field, she satisfied the "*stigma-plus*" test because her placement in the registry was "a direct threat not only to her reputation but to her employment prospects." 18 F.3d at 999; see also Dupuy v. McDonald, 141 F. Supp. 2d 1090, 1133 (N.D. Ill. 2001). Accordingly, because work in a chosen profession constitutes a protected liberty interest, and because Plaintiff alleged that placement in the registry will inhibit his efforts

14

to pursue that interest, the Court finds that Plaintiff has stated a claim upon which relief may be granted, and Delaware County's Motion to Dismiss will be denied with respect to this claim.

### 2.     *Procedural Due Process*

To state a due process claim, the plaintiff must allege that he was deprived of a protected liberty or property interest without the benefits of constitutionally required procedure. See Miller v. City of Philadelphia, 954 F. Supp. 1056, 1061 (E.D. Pa. 1997). Plaintiff does not allege that Defendant Delaware County in any way impeded his efforts to seek the expungement of the report. Indeed, prior to the administrative hearing requested by Plaintiff, CYS notified him that it would not pursue a case against him. Promptly thereafter, the report was ordered expunged. See Am. Compl. ¶¶ 27-32. Plaintiff does allege, however, that Delaware County maintained a policy which required its case workers to file indicated reports, often without substantial evidence. Id. at ¶ 89-91. Additionally, Plaintiff was not allowed to challenge the evidence in the indicated report before it was filed because judicial or administrative hearings are not held before an indicated report is accepted by the DPW and the name of the accused individual is added to ChildLine. Id. at ¶ 17. The Court therefore finds that Plaintiff has stated a claim upon which relief may be granted, and Delaware County's Motion to Dismiss will be denied with respect to this claim.

## C.   **Immunity**

Defendant Sandra Steiker contends that Plaintiff's Third Cause of Action must be dismissed because (1) she is immune from civil liability under Pennsylvania good faith immunity provisions such as those in the CPSL, 23 Pa. C.S. §§ 6301 et seq., and the Political Subdivision

Tort Claims Act, 42 Pa. C.S. §§ 8541 et seq.; and (2) she is protected by qualified immunity against his claim.[5]

### 1. *Statutory Good Faith Immunity*

The immunity provision of the CPSL states:

> A person, hospital, institution, school, facility, agency or agency employee that participates in good faith in the making of a report, whether required or not, cooperating with an investigation, testifying in a proceeding arising out of an instance of suspected child abuse . . . shall have immunity from civil and criminal liability that might otherwise result by reason of those actions.

23 Pa. C.S. § 6318(a). However, in Wade v. Pittsburgh, the Third Circuit held:

> [A state] immunity statute, although effective against a state tort claim, has no force when applied to suits under the Civil Rights Acts. The supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law. This result follows whether the suit to redress federal rights is brought in state or federal court. Were the rule otherwise, a state legislature would be able to frustrate the objectives of a federal statute.

765 F.2d 405, 407-08 (3d Cir. 1985) (citations omitted). Thus, while this defense may immunize Defendant Steiker from state law causes of action, it is inapplicable to claims arising from alleged violations of federal law. See Good v. Dauphin County Soc. Servs., 891 F.2d 1087, 1091 (3d Cir. 1989).[6]

### 2. *Qualified Immunity*

---

[5] Plaintiff also argues that absolute immunity does not apply to Defendant Steiker under Third Circuit precedent. However, because Defendant Steiker does not claim absolute immunity, the Court will not address its application.

[6] Defendant Steiker's defense concerning the Political Subdivision Tort Claims Act fails for the same reason.

16

"Qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001) (quotations and citations omitted). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining whether qualified immunity applies requires a two-part inquiry: (1) taken in the light most favorable to the party asserting the injury, whether the facts alleged show the conduct violated a constitutional right, and (2) whether the constitutional right was clearly established. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Walter v. Pike County, 2008 U.S. App. LEXIS 19760 at *19-20 (3d Cir. Sept. 18, 2008) ("First, we must ask whether the conduct alleged by the plaintiff violated a clearly established principle of constitutional or statutory law. If so, then we go on to ask whether the unlawfulness of the action would have been apparent to an objectively reasonable official." (internal citations omitted)).

The Court first finds that the facts alleged establish that Defendant Steiker's conduct violated a constitutional right. Here, Plaintiff alleges that Defendant Steiker deprived him of his right to substantive due process when she pursued an investigation of Plaintiff without reasonable cause to believe that the investigation was warranted and without substantial evidence to support an indicated report. See Am. Compl. ¶ 85. The CPSL requires any person who reports child abuse do so with reasonable cause and in good faith. See 23 Pa.C.S. § 6311(a), (d). Due to Defendant Steiker's alleged actions in violation of the CPSL, Plaintiff's name was placed in the ChildLine registry, which adversely affected his constitutional custodial rights to his

17

children.  See Section III(B)(1), supra.

The Court further finds that this constitutional right was clearly established at the time of Defendant Steiker's alleged actions.  As previously stated, the Supreme Court has recognized parents' fundamental liberty interest in the care and custody of their children.  See Robertson, 463 U.S. at 257-58.  The Third Circuit has additionally determined that the "state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse."  Croft, 103 F.3d at 1126; see also Miller, 174 F.3d at 376.  Accordingly, the Court will deny Defendant Steiker's Motion to Dismiss on immunity grounds.

**IV.   CONCLUSION**

For the aforementioned reasons, Defendants' Motions to Dismiss will be granted in part and denied in part. The claims remaining will be the Plaintiff's substantive and procedural due process claims in Counts Three and Four.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **J.T.M., an adult individual** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-4689 |
| | : | |
| | : | |
| **ESTELLE B. RICHMAN, <u>et al.</u>** | : | |

## ORDER

**AND NOW**, this 19th day of November, 2008, upon consideration of the Motions to Dismiss Plaintiff's Complaint by Defendant Estelle B. Richman (docket no. 7), Defendant Sandra Steiker (docket no. 8), Defendants Delaware County Department of Children and Youth Services, Delaware County, and Angela Albano (docket no. 23), and all responses thereto, and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that:

(1) The Motions are **GRANTED** as to Plaintiff's claims for injunctive relief (Counts One and Two);

(2) The Motions are **DENIED** as to Plaintiff's procedural due process claims (Counts Three and Four);

(3) The Motions are **DENIED** as to Plaintiff's substantive due process claims (Counts Three and Four);

(4) The Motions are **GRANTED** as to Plaintiff's claim for declaratory relief (Count Five);

(5)  The Sixth Cause of Action is **DISMISSED WITHOUT PREJUDICE**; and

(6)  Defendants Estelle B. Richman, Delaware County Department of Children and Youth Services, and Angela Albano are **DISMISSED** from this action.


**BY THE COURT:**


**/s/ Bruce W. Kauffman**
**BRUCE W. KAUFFMAN**